IN THE COUNTY COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
CIVIL DIVISION

MICHELE COZZOLINO,

    Plaintiff,

Case No.: _____

v.

Division: _____

KRISTINE STAFF, individually,

    Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MICHELE COZZOLINO ("Plaintiff"), sues Defendant, KRISTINE STAFF ("Defendant"), individually, and alleges:

### NATURE OF THE ACTION

1. This is an action for (i) unpaid overtime compensation, liquidated damages, and attorneys' fees and costs under the Fair Labor Standards Act, 29 U.S.C. Section 201, *et seq.* ("FLSA"); (ii) breach of contract/unpaid wages and attorneys' fees and costs under Section 448.08, Florida Statutes; and, in the alternative for (iii) quantum meruit for compensation of services and attorneys' fees and costs under Section 448.08, Florida Statutes; and (iv) unjust enrichment for the value of services and attorneys' fees and costs under Section 448.08, Florida Statutes; which damages do not exceed $50,000.00, as well as declaratory relief and all other relief this Court deems just and proper.

## PARTIES AND JURISDICTION

2. Plaintiff is a resident of Pasco County, Florida.

3. At all relevant times, Plaintiff was an employee of Defendant within the meaning of 29 U.S.C. Section 203(e).

4. Defendant is a resident of Pasco County, Florida.

5. At all material times to this action, Defendant was an employer within the meaning of 29 U.S.C. Section 203(d).

6. At all times relevant to this action, Defendant exercised control over the terms and conditions of Plaintiff's employment and the terms and conditions of her compensation.

7. This Court has original jurisdiction of Plaintiff's causes of action pursuant to the FLSA, 29 U.S.C. Section 216(b) and Section 34.01, Florida Statutes.

8. Venue is proper in this Court because Defendant resides in Pasco County, Florida, and the substantial facts giving rise to the claims in this case occurred in Pasco County, Florida.

## ALLEGATIONS OF FACT

9. On or about September 18, 2022, Defendant asked Plaintiff to enter into an employment agreement to provide childcare and domestic services for the Defendant's minor children, including transporting Defendant's minor children to and/or from school, extracurricular activities, and doctor's appointments, as well as handling housekeeping, laundry, and shopping due to Defendant's busy schedule as an emergency room physician.

10. Defendant agreed to pay Plaintiff $25.00 an hour.

11. Defendant paid her former childcare and domestic services employee $25.00 an hour.

12. Defendant agreed to reimburse the Plaintiff for mileage.

13. Defendant reimbursed her former childcare and domestic services employee for mileage.

14. Defendant promised to reimburse Plaintiff for items purchased by Plaintiff at Defendant's request.

15. Defendant reimbursed her former childcare and domestic services employee for items purchased by the former childcare and domestic services employee at Defendant's request.

16. Based on Defendant's promises, Plaintiff did not seek other employment and agreed to take the job for the compensation promised by Defendant.

17. Accordingly, Plaintiff began working for Defendant as a childcare and domestic service provider on or about September 18, 2022.

18. On October 6, 2022, this employment agreement ("Contract") was memorialized in a text message conversation between Plaintiff and Defendant wherein Defendant stated that she "was planning on paying you $25 an hour" and stated "[m]ileage included of course!" True and correct copies of the text message screenshots from October 6, 2022, are attached hereto as **Exhibit "A"** and incorporated herein by reference.

19. Plaintiff provided childcare and domestic services to Defendant from September 18, 2022, through August 10, 2023.

20. Plaintiff's childcare and domestic service duties included transporting Defendant's minor children to and/or from school, extracurricular activities, and doctor's appointments, cooking, housekeeping, laundry, shopping, and other home-related chores due to Defendant's busy schedule as an emergency room physician.

21. At Defendant's request, Plaintiff kept close track of her hours and mileage from the start of her employment.

22. Plaintiff's hours and mileage are corroborated by Defendant's work schedules and text messages between Plaintiff and Defendant.

23. Plaintiff shared the foregoing information with Defendant via a Google Share Document.

24. Plaintiff worked approximately and at least 1,633 hours for Defendant from September 18, 2022 through August 10, 2023.

25. Throughout Plaintiff's employment with Defendant, there were workweeks in which Plaintiff worked in excess of 40 hours.

26. Plaintiff worked approximately, or at least 437.75, in overtime hours.

27. Defendant required, suffered, and/or permitted Plaintiff to work more than 40 hours in a workweek.

28. Defendant knowingly scheduled Plaintiff to work in excess of 40 hours in a workweek.

29. In the absence of any contract, Plaintiff conferred a benefit on Defendant, and Defendant accepted the benefit of Plaintiff's childcare and domestic services.

30. Defendant failed to pay Plaintiff at the rate of $25.00 per hour in accordance with the Contract for her earned, unpaid compensation from September 18, 2022 through August 10, 2023.

31. Defendant failed to reimburse Plaintiff for mileage.

32. Even though Plaintiff provided childcare and domestic services to Defendant's minor children in accordance with the Contract, Defendant failed to pay Plaintiff pursuant to the Contract.

33. Additionally, Defendant failed to reimburse Plaintiff for out-of-pocket expenses she incurred at Defendant's direction.

34. Further, Defendant failed to pay Plaintiff at a rate of one and one-half times Plaintiff's regular rate for all hours worked in excess of 40 per workweek.

35. Plaintiff is owed compensation at one and one-half times her regular rate for all hours worked over 40 hours per workweek.

36. Plaintiff's employment with Defendant ended on or about August 10, 2023.

37. As an employee, Plaintiff was entitled to be paid at the agreed-upon rate.

38. At the very least, Plaintiff was entitled to be paid the minimum wage for all hours worked, as well as overtime compensation for all hours worked in

excess of 40 in any given workweek, and/or a reasonable value for the benefit conferred upon Defendant to which Defendant accepted.

39. Prior to initiating this action, Plaintiff requested her unpaid compensation from Defendant on numerous occasions, including through the Google Share Document, certified mailings, text messages, email, and in-person conversations.

40. On March 1, 2024, Plaintiff demanded payment of the minimum wage under Florida law, as applicable, through undersigned counsel as required under the Florida Minimum Wage Act. Plaintiff also reserved her right to pursue her unpaid wages claims as fully set forth herein.

41. On or about March 18, 2024, Defendant finally paid Plaintiff at the applicable minimum wage rate in the amount of $17,916.50, less applicable deductions. Notwithstanding this minimum wage payment, Defendant still owes Plaintiff the difference between $25.00 per hour for each hour worked and the applicable minimum wage rate for each hour worked, as well as overtime compensation calculated based on one and one-half times the regular rate of $25.00 for same as alleged herein.

42. Despite Plaintiff's demands for compensation, Defendant refused to pay Plaintiff in accordance with the Contract.

43. Defendant knew or should have known Plaintiff was entitled to receive overtime compensation at the rate of one and one-half times the regular rate for all hours worked in excess of 40 hours in any workweek.

44. Defendant's actions were willful, and Defendant did not act in good faith to be in compliance with the FLSA.

45. Further, Defendant had a duty to maintain accurate time records for all hours Plaintiff worked and failed to do so in violation of the FLSA by failing to provide Plaintiff with timesheets or any other form for the purpose of tracking Plaintiff's hours.

## COUNT I
### Breach of Contract/Unpaid Wages

46. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 45 above as if fully restated herein.

47. On or about September 18, 2022, Plaintiff and Defendant entered into the Contract.

48. Pursuant to the Contract, Defendant promised to pay Plaintiff $25.00 per hour for all hours worked.

49. Defendant further agreed to pay Plaintiff for mileage she incurred while working for Defendant.

50. Under the Contract, Defendant also agreed to reimburse Plaintiff for out-of-pocket expenses that Plaintiff incurred for purchasing items at the Defendant's direction.

51. Defendant breached her promise to pay Plaintiff at the agreed to rate of $25.00 an hour for all hours Plaintiff performed for the benefit of Defendant.

52. Defendant also breached her promise to reimburse Plaintiff for all

mileage Plaintiff incurred for the benefit of Defendant.

53. Defendant breached her promise to reimburse Plaintiff for out-of-pocket expenses incurred at Defendant's direction.

54. For example of the foregoing:

    a. Defendant failed to pay Plaintiff the promised $25.00 per hour for all hours worked and instead paid Plaintiff only the minimum wages demanded in Plaintiff's pre-suit notice.

    b. Defendant failed to reimburse Plaintiff for mileage.

    c. Defendant failed to reimburse Plaintiff for items that Plaintiff purchased at Defendant's direction and in which Defendant retained.

55. Defendant's breaches of the Contract caused Plaintiff to suffer damages in the form of unpaid wages and other compensatory damages as provided by the parties' agreement.

56. Defendant's actions caused Plaintiff to hire the undersigned law firm to represent her in this cause and to incur attorneys' fees and costs.

57. Plaintiff is entitled to recover attorneys' fees and costs connected with this action pursuant to Section 448.08, Florida Statutes.

WHEREFORE, Plaintiff prays this Court to enter judgment against Defendant and award Plaintiff:

    A. Money damages for Plaintiff's unpaid wages, mileage reimbursement, and out-of-pocket expenses;

    B. Pre- and post-judgment interest;

    C.    Attorneys' fees and costs pursuant to Section 448.08, Florida Statutes; and

    D.    Grant such other relief which this Court deems just and proper.

## COUNT II
### Unpaid Overtime under 29 U.S.C. Section 207

58.    The Plaintiff incorporates by reference, the allegations set forth in paragraphs 1 through 45 above as if fully restated herein.

59.    This is an action for damages and equitable relief under the FLSA, including, but not limited to, declaratory and injunctive relief.

60.    At all relevant times, Defendant was an "employer" as defined by 29 U.S.C. Section 203(d).

61.    Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. Section 203(e), and worked for Defendant since on or about September 18, 2022.

62.    As a domestic service worker, Plaintiff and Defendant were engaged in commerce. 29 U.S.C. Section 202(a) and 29 C.F.R. Section 552.99.

63.    29 U.S.C. Section 207(a)(1) of the FLSA prohibits an employer from employing its employees for a workweek longer than 40 hours unless such employee receives compensation for all hours worked in excess of 40 hours at a rate not less than one and one-half times the regular rate of pay.

64.    Defendant regularly employed Plaintiff in excess of 40 hours in a workweek and had not paid Plaintiff at a rate of one and one-half times her regular

rate of pay for all hours worked in excess of 40 hours in a workweek, and thus Defendant engaged in a pattern and practice of violating 29 U.S.C. Section 207 of the FLSA with respect to the Plaintiff.

65. Defendant's actions were deliberate, willful, and without good faith or any legal justification within the meaning of the FLSA.

66. Defendant is liable under the FLSA for failing to properly compensate Plaintiff.

67. Defendant is liable under the FLSA for failing to maintain proper time records.

68. As the direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of income and other damages and is entitled to liquidated damages and attorneys' fees and costs incurred in connection with this claim.

69. Defendant's conduct constitutes a willful violation of 29 U.S.C. Section 255(a) of the FLSA, and Defendant knew and showed reckless disregard of the fact that Defendant's compensation practices were in violation of these laws.

70. Plaintiff is entitled to recover her attorneys' fees and costs connected with this action pursuant to 29 U.S.C. Section 216(b).

WHEREFORE, Plaintiff prays this Court to enter judgment against the Defendant and award the Plaintiff:

    A.    Unpaid overtime compensation and an additional equal amount as liquidated damages;

    B.    Pre- and post-judgment interest;

    C.    Attorneys' fees and costs pursuant to 29 U.S.C. Section 216(b);

    D.    An injunction to stop Defendant from violating the FLSA;

    E.    Issue an order related to monitoring of Defendant's pay practices; and

    F.    Grant such other relief which this Court deems just and proper.

## COUNT III
## Quantum Meruit

71. Pleading in the alternative to the foregoing Counts, Plaintiff restates and incorporates the allegations set forth in paragraphs 2, 4, 7, and 8 above as if fully restated herein.

72. On or about September 18, 2022, Defendant, who was going through a contentious divorce, asked Plaintiff to provide childcare and domestic services to Defendant's minor children.

73. Defendant promised to pay Plaintiff $25.00 an hour.

74. Defendant promised to reimburse Plaintiff for mileage.

75. Defendant promised to reimburse Plaintiff for items Plaintiff purchased at the Defendant's request.

76. Based on Defendant's promises, Plaintiff did not seek other employment, and provided childcare and domestic services to Defendant's minor children, including transporting the Defendant's children to and/or from school, extracurricular activities, and doctor's appointments, housekeeping, laundry, shopping, and other home-related chores due to the Defendant's busy schedule as

an emergency room physician.

77. At Defendant's request, Plaintiff kept close track of her hours and mileage from the start of Plaintiff's employment.

78. Plaintiff provided approximately 1,633 hours of childcare and domestic services to Defendant from September 18, 2022 through August 10, 2023.

79. Plaintiff's hours and mileage are corroborated by Defendant's work schedules and text messages between Plaintiff and Defendant.

80. Plaintiff shared the foregoing information with Defendant via a Google Share Document.

81. Even though Plaintiff provided childcare and domestic services to Defendant's minor children, Defendant failed to pay Plaintiff a reasonable value for the benefit conferred upon Defendant to which Defendant accepted.

82. Defendant failed to pay Plaintiff for mileage Plaintiff incurred while working for Defendant.

83. Defendant failed to reimburse Plaintiff for the out-of-pocket expenses that Plaintiff incurred for purchasing items at Defendant's direction and for which Defendant received and retained.

84. Defendant and Plaintiff, by their conduct, entered into a contract implied in fact for the rendering of childcare and domestic services in exchange for payment for those services.

85. Plaintiff conferred benefits upon Defendant by performing childcare

and domestic services for Defendant and was paid inadequate consideration for those services.

86. Defendant had knowledge of the childcare and domestic services provided to her by Plaintiff and acquiesced in the provision of those services.

87. Defendant voluntarily accepted and retained the benefit of the childcare and domestic services conferred on her behalf by Plaintiff.

88. Defendant voluntarily accepted and retained the benefits of the items Plaintiff purchased for Defendant at Defendant's request.

89. Defendant understood that Plaintiff expected to be compensated for the rendering of childcare and domestic services.

90. The circumstances were such that a reasonable person receiving the benefit would normally expect to pay for it.

91. Defendant would be unjustly enriched if allowed to retain the benefits and services conferred on her behalf by Plaintiff unless Defendant pays Plaintiff a fair amount to compensate her for the value of the services conferred upon the Defendant.

92. As a result, Plaintiff is entitled to the reasonable value of the labor and services she performed and the market value of the items Plaintiff purchased at Defendant's request.

93. Defendant's actions caused Plaintiff to hire the undersigned law firm to represent her in this cause and to incur attorneys' fees and costs.

94. Pursuant to Section 448.08, Florida Statutes, Plaintiff is entitled to an

award of attorneys' fees, costs, and expenses incurred in this action, as this is an action seeking an accounting and payment of unpaid wages owed to Plaintiff.

WHEREFORE, Plaintiff prays this Court to enter judgment against Defendant, and award Plaintiff:

    A.    Money damages in the amount to compensate Plaintiff for the value of her services and expenses incurred;

    B.    Pre- and post-judgment interest;

    C.    Attorney's fees pursuant to Sections 448.08, Florida Statutes; and

    D.    Grant such other relief that this Court deems just and proper.

## COUNT IV
### Unjust Enrichment

95.    Pleading in the alternative to the foregoing Counts, Plaintiff restates and incorporates the allegations set forth in paragraphs 2, 4, 7, and 8 above as if fully restated herein.

96.    On or about September 18, 2022, Defendant, who was going through a contentious divorce, asked Plaintiff to provide childcare and domestic services to Defendant's minor children.

97.    Plaintiff did not seek other employment and provided childcare and domestic services to Defendant's minor children, including transporting Defendant's children to and/or from school, extracurricular activities, and doctor's appointments, housekeeping, laundry, shopping, and other home-related chores due to the Defendant's busy schedule as an emergency room physician.

98. At Defendant's request, Plaintiff kept close track of her hours and mileage from the start of her employment.

99. Plaintiff provided approximately 1,633 hours of childcare and domestic services to the Defendant from September 18, 2022 through August 10, 2023 at Defendant's request.

100. Plaintiff's hours and mileage are corroborated by Defendant's work schedules and text messages between Plaintiff and Defendant.

101. Plaintiff shared the foregoing information with Defendant via a Google Share Document.

102. Plaintiff purchased items for Defendant at Defendant's request of which Defendant retained the benefit.

103. Even though Plaintiff provided childcare and domestic services to Defendant, Defendant failed to pay Plaintiff a reasonable value for the benefit conferred upon Defendant to which Defendant accepted.

104. Defendant also failed to pay Plaintiff for mileage she incurred while working for Defendant.

105. Additionally, Defendant failed to reimburse Plaintiff for the out-of-pocket expenses that Plaintiff incurred for purchasing items for Defendant at Defendant's direction.

106. Plaintiff directly conferred benefits on the Defendant by providing approximately 1,633 hours of childcare and domestic services to Defendant.

107. Plaintiff also directly conferred benefits on Defendant by purchasing

items for Defendant at Defendant's request.

108. Defendant had knowledge of the childcare and domestic services provided to her by Plaintiff.

109. Defendant also had knowledge of the items Plaintiff purchased for Defendant at the Defendant's request.

110. Defendant voluntarily accepted and retained the benefits of the childcare and domestic services provided by Plaintiff without adequately compensating Plaintiff.

111. Defendant voluntarily accepted and retained the benefits of the items Plaintiff purchased for Defendant at Defendant's request.

112. Defendant's retention of the benefits and services conferred upon her by Plaintiff would be inequitable unless Defendant pays to Plaintiff an amount to compensate her for the value of the services and benefits that Plaintiff conferred upon Defendant.

113. Defendant's actions caused Plaintiff to hire the undersigned law firm to represent Plaintiff in this cause and to incur attorneys' fees and costs.

114. Pursuant to Section 448.08, Florida Statutes, Plaintiff is entitled to an award of attorneys' fees, costs, and expenses incurred in this action, as this is an action seeking an accounting and payment of unpaid wages owed to Plaintiff.

WHEREFORE, Plaintiff prays this Court to enter judgment against Defendant and award Plaintiff:

A. Money damages in the amount to compensate Plaintiff for the value

of her services and expenses incurred;

B. Pre- and post-judgment interest;

C. Attorney's fees pursuant to Sections 448.08, Florida Statutes; and

D. Grant such other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial of all claims so triable.

Date: April 18, 2024

Respectfully submitted,

/s/ Cynthia N. Sass
Cynthia N. Sass, Esquire
Florida Bar No.: 0691320
Sarah A. Naccache, Esquire
Florida Bar No.: 1028143
**SASS LAW FIRM**
601 West Dr. Martin Luther King, Jr. Blvd.
Tampa, Florida 33603
Tel:   (813) 251-5599
Fax:   (813) 259-9797

**DESIGNATION OF E-MAIL SERVICE**:
Primary:     csass@sasslawfirm.com
Secondary:   sbartlett@sasslawfirm.com
Primary:     snaccache@sasslawfirm.com
Secondary:   reception@sasslawfirm.com
*Attorneys for Plaintiff*

**To: Kristi Staff**

*Oct 6, 2022 at 7:03 PM*

> Hey Sis, Quick question.... When I give you my hours, are you and Brian settling up for hours that I have have had Camden or is he paying me directly ?  — 7:03 PM

Let me talk to him. I don't want anything to go and miscommunication so let's be open with how we're doing payment. I was planning on paying you $25 an hour flat. I don't know if Brian was planning on paying you on top of that but he's an extremely open and fair guy so please let's just all be open with each other. I don't want anything like poor communication with Edward ever! It's definitely not worth it!  — 7:11 PM

It's going to be easier for me and what the lawyers want to pay you weekly. I know that we are behind and doing that so if you don't mind writing down hours worked per day and then we can tell him up and I'd love to pay you tomorrow! I will also pay you separately for the microwave and any outstanding receipts!  — 7:11 PM

> I definitely do not want a repeat of the " Edward clusterfuck " I never wanted that at all. You did say that you were paying me $25 flat rate (for your babies, Camden is not one of yours) you also said that you were reimbursing mileage because that is what you read the average is on care.com, which I think is great since I have a leased vehicle and any mileage overage, I pay for at the end of my lease. As far as what the lawyers want to pay me weekly, I specifically told you and Brian, this situation cannot be a taxable event for me that would effect my alimony. Brian said that would not be an issue..... if it is going to be an issue, we need to have another discussion . I have written out my hours and mileage thus far, I will have that for you in the morning.  Love you ❤️  — 7:43 PM

I don't want to tax you at all!!  I just want to be able to show Katrina what I spend weekly.  It's for her eyes only!!  Mileage included of course!  — 7:45 PM

> Amelia says that you and I should do a shared google doc, so that you and I can make entries that are private.  — 8:02 PM

Sounds good!  — 8:04 PM

> I can make daily entries with my hours and miles for you  — 8:04 PM

Perfect!  — 8:05 PM

